UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

JOHN PIERRE DUPONT,

Defendant.

---

**OPINION AND ORDER**

19 Cr. 791 (ER)

Ramos, D.J.:

John Pierre Dupont ("Dupont") is charged with one count of bail jumping pursuant to 18 U.S.C. §§ 3146(a)(1) and (b)(1)(A)(i) for failing to appear on charges related to wire fraud and aggravated identity theft in the Southern District of New York.  Before the Court is Dupont's motion to suppress statements made following his arrest in Oklahoma City, Oklahoma on October 27, 2019.  For the following reasons, Dupont's motion is DENIED.

## I.   BACKGROUND

### A. Factual Background

On March 13, 2019, Dupont was charged in the Southern District of New York with wire fraud pursuant to 18 U.S.C. § 1343 and with aggravated identity theft pursuant to 18 U.S.C. § 1028A.  No. 2:19-MJ-01179(JFM), Doc. 1.  On March 18, 2019, he was arrested in his home in California.  Doc. 18 at 3.  On March 19, 2019, Dupont appeared before a Magistrate Judge in the

neighboring District of Arizona[1] where he stated that his true name was John Pierre Dupont.[2] No. 2:19-MJ-01179(JFM), Doc. 2. The conditions of bail were set, and he was directed to appear at the United States Courthouse for the Southern District of New York at 10:00 a.m. on March 25, 2019. No. 2:19-MJ-01179(JFM), Doc. 6. Dupont signed an order acknowledging his obligations and was released on $100,000 unsecured bond. *Id.* On March 25, 2019, Dupont failed to appear. Doc. 1. For approximately seven months thereafter, Dupont evaded arrest. Doc. 18 at 4.

On October 27, 2019, Dupont was pulled over by police for driving through a three-way stop sign in Oklahoma City, Oklahoma. Doc. 14, Ex. A (hereinafter "Incident Report").[3] At the traffic stop, the police officer asked Dupont for his driver's license and insurance. *Id.* at 5. Dupont gave the officer a California driver's license bearing the name John Rinaldo. *Id.* The officer ran a background check on the listed name and found an outstanding warrant for John Rinaldo in the Southern District of New York. *Id.* The officer placed Dupont in investigative detention, handcuffed Dupont behind his back, and secured him in the police car pending identification. *Id.* After Dupont consented to a search of his pockets and wallet, the officer found a Nevada driver's license bearing the name of John DuPont. *Id.* The officer then asked Dupont what his real name was, and Dupont responded by providing yet a third name, John Reynolds. *Id.* At that point, the officer placed Dupont under arrest for giving false information and transported him to the Oklahoma County Jail. *Id.*

---

[1] Rule 5(c)(2)(B)(i) of the Federal Rules of Criminal Procedure allows for a defendant to be arraigned in an adjacent district to the district of arrest when "the appearance can occur more promptly there[.]"

[2] Dupont legally changed his name to John Pierre Dupont in California in 2012. Originally, his name was John Gary Rinaldo. No. 2:19-MJ-01179(JFM), Doc. 1 at 3 n.1.

[3] The Incident Report has not been filed yet and was provided to the Court by counsel for Dupont.

During the booking process, a second officer asked Dupont for his name while he was being fingerprinted. *Id.* Dupont told the second officer that his name was Michael Reynolds. *Id.* Dupont's fingerprints came back showing that he was, in fact, John Rinaldo with a pending warrant for fraud in the Southern District of New York. *Id.* Dupont was issued citations for failure to stop for a stop sign and for giving false information. *Id.*

**B. Procedural History**

On March 13, 2019, an arrest warrant for Dupont was issued in the United States District Court for the Southern District of New York. No. 2:19-MJ-01179(JFM), Doc. 1. On June 13, 2019, a grand jury issued an indictment for wire fraud and aggravated identity theft. No. 1:19-cr-00444(RMB), Doc. 2. Dupont's trial on those charges is scheduled to begin on June 28, 2021. No. 1:19-cr-00444(RMB), Doc. 37.

On November 6, 2019, a grand jury in the Southern District of New York separately issued an indictment for bail jumping against Dupont. Doc. 1. On January 15, 2021, Dupont moved to suppress the post-arrest statement he made to the officer who booked him in Oklahoma on the grounds that it was obtained in violation of his Fifth Amendment rights. Doc. 14. Dupont attached the October 2019 Incident Report from the Oklahoma City Police Department to his motion. On February 12, 2021, the Government opposed. Doc. 18.

**II.   RELEVANT LAW**

The Fifth Amendment to the U.S. Constitution requires, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" In the context of a custodial interrogation, the Supreme Court has held that

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise

3

> deprived of his freedom of action in any significant way . . . . Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The Supreme Court has emphasized that the protections prescribed by *Miranda* "are to ensure that the police do not coerce or trick captive suspects into confessing, [and] to relieve the inherently compelling pressures generated by the custodial setting itself, which work to undermine the individual's will to resist . . . ." *Berkemer v. McCarty*, 468 U.S. 420, 433 (1984) (internal quotations omitted). Following *Miranda*, the Supreme Court further explained that "a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in *Miranda*, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested." *Id.* at 434. "It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Id.* at 440 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1984)).

Under Second Circuit precedent, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rosa v. McCray*, 396 F.3d 210, 220-21 (2d Cir. 2005) (internal quotations omitted). Moreover, the Second Circuit has adopted the "routine booking question exception" posited by a plurality of the Supreme Court in *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) and reasoned that "[r]outine questions . . . ordinarily innocent of any investigative purpose, do not pose the dangers *Miranda* was designed to check." *United States v. Gotchis*, 803 F.2d 74, 79 (2d Cir. 1986). Accordingly, "'pedigree' questions that

4

pertain to administration or a defendant's basic identification information do not trigger *Miranda*." *United States v. Familetti*, 878 F.3d 53, 57 (2d Cir. 2017).

To determine whether the information at issue falls within the routine booking question exception, the court must determine whether the information was gathered for ordinary police administrative purposes or to illicit incriminating information from the defendant. *See United States v. Carmona*, 873 F.2d 569, 573 (2d Cir. 1989). If the latter, the statements violate the Fifth Amendment and must be suppressed.

### III.   DISCUSSION

Dupont seeks to suppress his statement to the Oklahoma City Police that his name was Michael Reynolds which he made during his arrest on October 27, 2019.[4] Doc. 14 at 1. Dupont argues the statements he made regarding his true name were made during a custodial interrogation during which the police failed to advise him of his Fifth Amendment rights. *Id.* at 2. The Government avers that Dupont's statement that his name was Michael Reynolds was made in response to routine questioning during the administrative booking process and is therefore exempt from Fifth Amendment protections. Doc. 18 at 6. Despite the incriminating effect of Dupont's statement, the Court finds it was merely a response to a pedigree question and therefore the method of procuring Dupont's statement did not violate Dupont's Fifth Amendment rights.

Even following formal arrest, statements obtained during administrative booking procedures are exempted from *Miranda* protections. *E.g.*, *United States v. Smalls*, 719 Fed.

---

[4] The Government has agreed not to rely at trial on Dupont's other statement, that his name was John Reynolds, made during the traffic stop, rendering the motion moot as to that statement. Because Dupont's statements made during the traffic stop are not at issue, the Court need not determine whether the circumstances of the traffic stop amounted to custodial interrogation. Moreover, since Dupont's custodial status during fingerprinting is not a materially disputed fact, an evidentiary hearing is not required. *See United States v. Martinez*, 922 F. Supp. 2d 322, 325 (S.D.N.Y. 2014) ("A defendant seeking a hearing on a suppression motion bears the burden of showing the existence of disputed issues of material fact.") (internal quotations omitted).

App'x 83, 85 (2d Cir. 2018) ("*Miranda* protections . . . do not apply during pedigree interviews or normal booking procedures."). In *Miranda,* "the Supreme Court was concerned with protecting the suspect against interrogation of an investigative nature" and therefore *Miranda* protections do not extend to "basic identifying data required for booking and arraignment." *United States ex rel. Hines v. LaVallee*, 521 F.2d 1109, 1112-13 (2d Cir. 1975).

Of course, pedigree questions during administrative procedures are not exempt from *Miranda* protections *carte blanche.* To determine whether a pedigree question implicates *Miranda*, the Second Circuit requires an objective inquiry: "[s]hould the police have known that asking the pedigree questions would elicit incriminating information?" *Rosa*, 396 F.3d at 222. But the Court finds no such awareness in this case. The officer's request for Dupont's name during fingerprinting is fundamentally a pedigree question. *See United States v. Nogueira*, No.08-CR-876(JG), 2009 WL 3242087, at * 2 (E.D.N.Y. Oct. 6, 2009) ("It must be that questions asked at the time of booking regarding an arrestee's name, aliases, date of birth, address, place of employment and marital status fall within the purview of [the routine booking] exception."). Asking a suspect for their name in order to fingerprint them emphatically falls within the "routine booking question exception which exempts from *Miranda*'s coverage questions to secure the biographical data necessary to complete booking or pretrial services." *Pennsylvania v. Muniz*, 496 U.S. at 601 (internal quotations omitted) (plurality found questions regarding defendant's name, address, height, weight, eye color, date of birth, and current age fall within a "routine booking question exception" to *Miranda* protections).

Nor does the Court find any abuse of the pedigree question exception that could subsequently trigger *Miranda*. Applying the Second Circuit's test, the record does not show the second officer possessed the requisite awareness that his question to Dupont would elicit incriminating information. The officer who processed Dupont was not the same officer who

6

initially stopped Dupont for the traffic violation and detained him for providing false identification.  Incident Report at 5.  Moreover, "[a]n arresting officer cannot assume that when he asks a suspect for their name he will be given a false answer."  *Carmona*, 873 F.2d at 573 (court held that requesting a name constituted essential identifying information for a suspect's booking and arraignment).  In the Southern District of New York, "[s]imply because a defendant gives false information in response to pedigree questions, and therefore renders the information incriminating, does not mean that *Miranda* warnings [are] required."  *United States v. Tavares*, No. 01 CR.1115(JFK), 2002 WL 31571662, at *6 (S.D.N.Y Nov. 18, 2002).  Therefore, Dupont's response during fingerprinting that his name was Michael Reynolds did not violate his Fifth Amendment right against self-incrimination.  His statement, therefore, is not suppressible as a matter of law.

### IV.  CONCLUSION

For the foregoing reasons, Dupont's motion to suppress is DENIED.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 14.

SO ORDERED.

Dated:   April 13, 2021
         New York, New York

_____
Edgardo Ramos, U.S.D.J.